UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------X

JAMAR SMYTHE

                         Plaintiff,

              -against-                               **COMPLAINT AND**
                                                     **JURY DEMAND**

CITY OF YONKERS, COUNTY OF WESTCHESTER,
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SERVICES,
WESTCHESTER DEPARTMENT OF CORRECTIONS,
WESTCHESTER COUNTY DISTRICT ATTORNEY'S
OFFICE, JANE DOES 1-10 & JOHN DOES 1-10 OF PERSONS
EMPLOYED BY WESTCHESTER COUNTY DISTRICT
ATTORNEY'S OFFICE, JANET DIFIORE, *sued individually
and in her official capacity*, LANA HOCHHEISER, *sued
individually and in her official capacity*, CRAIG CECCHINI,
*sued individually and in his official capacity*, RASHAWN
WOODLEY, *sued individually and in his official capacity,*
TIMOTHY WARD, *sued individually and in his official capacity,*
LAURIE SAPAKOFF, *sued individually and in her official capacity,*
STEVEN BENDER, *sued individually and in his official capacity*,
CITY OF YONKERS POLICE DEPARTMENT, JANE
DOES 1-10 & JOHN DOES 1-10 OF PERSONS
EMPLOYED BY CITY OF YONKERS POLICE DEPARTMENT,
CHARLES GARDNER, *sued individually and in his
official capacity*, EDMUND HARTNETT, *sued individually
and in his official capacity*, MICHAEL CASSINO, *sued
individually and in his official capacity*, CHRISTIAN KOCH,
*sued individually and in his official capacity*, DENNIS MOLINA,
*sued individually and in his official capacity*, MICHAEL
MUELLER, *sued individually and in his official capacity*,
VINCENT STARKEY, *sued individually and in his official capacity*,
SEAN FOGARTY, *sued individually and in his official capacity*,
TIMOTHY CLEARY, *sued individually and in his official capacity*,
ROBERT BOCK, *sued individually and in his official capacity*,
DENNIS MULLIN, *sued individually and in his official capacity*,
THOMAS BRAIG, *sued individually and in his official cap*acity,

                              Defendants.
-------------------------------------------------------------------------------------------------X

Plaintiff Jamar Smythe, by and through his attorneys, Fasulo Braverman & Di Maggio, LLP, and Anthony DiPietro, Esq., respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of Plaintiff's civil rights, as said rights are secured by the statutes and the Constitutions of the State of New York and the United States.  Plaintiff also asserts supplemental state law tort claims.

## JURISDICTION

2.     This Court has jurisdiction, pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

3.     This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367(a).

4.     Plaintiff has complied with the requirements of New York General Municipal Law Section 50-I by making and serving a notice of claim on the State of New York, City of Yonkers, and the County of Westchester on July 17, 2015, within the time required by New York General Municipal Law Section 50-e.  More than thirty days have elapsed since the service of that notice, and no offer of settlement has been made.

5.     At the request of the City of Yonkers, Plaintiff submitted to a hearing pursuant to New York General Municipal Law Section 50-h on November 19, 2015.

6.     At the request of the County of Westchester, Plaintiff submitted to a hearing pursuant to New York General Municipal Law Section 50-h on December 18, 2015.

## VENUE

7.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York, the judicial district in which the claims arose.

## JURY DEMAND

8.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to the Seventh Amendment of the United States Constitution.

## PARTIES

9.     Plaintiff is a citizen of the United States of America, and at all relevant times a resident of the State of New York.  Plaintiff resides in Peekskill, New York, which is located in the Southern District of New York federal district.

10.    Defendant the CITY OF YONKERS (Yonkers, New York) was and is a municipal entity duly organized and existing under and by the virtue of the laws of the State of New York.  It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement. Yonkers, New York is located in the Southern District of New York federal district.

11.    Defendant YONKERS POLICE DEPARTMENT, hereinafter referred to as "YPD," was and is an agency of the defendant, CITY OF YONKERS.

12.    Defendant COUNTY OF WESTCHESTER was and is a municipality that is a political subdivision of the State of New York, was the employer of District Attorney JANET DIFIORE, and is and was at all times relevant to this complaint responsible for the policies, practices, and customs of the Westchester County District Attorney's Office, hereinafter referred to as "WCDAO". COUNTY OF WESTCHESTER and WCDAO conducts their business and affairs in the Southern District of New York federal district.

13.    Defendant COUNTY OF WESTCHESTER was and is a municipality that is a political subdivision of the State of New York, was and is the employer of Defendant WESTCHESTER COUNTY DEPARTMENT OF CORRECTIONS, hereinafter referred to as "WCDOC", and is and was at all times relevant to this complaint responsible for the polices, practices,

and customs of the WCDOC. WCDOC conducts its business and affairs in the Southern District of New York federal district.

14.     Defendant EDMUND HARTNETT was at all relevant times until December 31, 2011, the duly appointed, qualified, and acting Commissioner of the YPD, Yonkers, New York.  As such, he is the highest supervisory official of the YPD and is responsible for the training and supervision of police personnel.  He is also responsible for enforcing the regulations and policies of the YPD and for ensuring that YPD employees obey, employ, and implement appropriate regulations and policies.  At all relevant times until December 31, 2011, he was acting in his capacity as an agent, servant, and employee of the defendant CITY OF YONKERS and YPD.  He is sued individually and in his official capacity.

15.     Defendant CHARLES GARDNER was at all relevant times beginning January 1, 2012, the duly appointed, qualified, and acting Commissioner of the YPD, Yonkers, New York.  As such, he is the highest supervisory official of the YPD and is responsible for the training and supervision of police personnel.  He is also responsible for enforcing the regulations and policies of the YPD and for ensuring that YPD employees obey, employ, and implement appropriate regulations and policies.  At all relevant times beginning January 1, 2012, he was acting in his capacity as an agent, servant, and employee of the defendant CITY OF YONKERS and YPD.  He is sued individually and in his official capacity.

16.    Police officers SEAN FOGARTY, THOMAS CLEARY, ROBERT BOCK, DENNIS MULLIN, THOMAS BRAIG, were/are police officers employed by the YPD, Yonkers, New York and at all relevant times herein were acting in their capacity as agents, servants, and employees of the Defendant CITY OF YONKERS and YPD.  They are sued individually and in their official capacities.

17.    Detectives MICHAEL CASSINO, CHRISTIAN KOCH, DENNIS MOLINA, MICHAEL MUELLER, and VINCENT STARKEY, were/are detectives employed by the YPD, Yonkers, New York and at all relevant times herein were acting in their capacity as agents, servants, and employees of the Defendant CITY OF YONKERS and YPD.  They are sued individually and in their official capacities.

18.    Defendants JOHN DOES 1-10 and JANE DOES 1-10 are presently unidentified employees of the YPD and Westchester County District Attorney's Office who participated in the unlawful detention, arrest, and malicious prosecution of Plaintiff, and whose unlawful conduct directly caused or contributed to the damage complained of by Plaintiff herein.  Plaintiff intends to identify, serve, and proceed against these individuals at such time as he is able. They are each sued individually and in their official capacities.

19.    Defendant JANET DIFIORE was at all relevant times the District Attorney for Defendant COUNTY OF WESTCHESTER and Defendants LANA HOCHHEISER, CRAIG CECCHINI, TIMOTHY WARD,

RASHAWN WOODLEY, LAURIE SAPAKOFF, and STEVEN BENDER are/were Assistant District Attorneys employed by Defendant COUNTY OF WESTCHESTER and at all relevant times herein were acting in their capacity as agents, servants, and employees of the defendant, the COUNTY OF WESTCHESTER.  They are sued individually and in their official capacities.

20.    At all relevant times herein, the Defendants CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JANE DOES 1-10, and JOHN DOES 1-10 either personally or through their agents and employees, were acting under the color of state law, as well as authority pursuant to the policies, regulations, or decisions officially adopted or promulgated by agents of the YPD and Westchester County District Attorney's Office, whose acts may fairly be said to represent official policy or governmental custom of the YPD, City of Yonkers, County of Westchester, and State of New York.

21.    Each and all of the acts of the individual Defendants alleged herein were carried out by said Defendants while acting within the scope of their employment by Defendants CITY OF YONKERS, COUNTY OF WESTCHESTER, YPD, WCDAO, WCDOC, and STATE OF NEW YORK.

## FACTUAL ALLEGATIONS

22.    On or about September 16, 2011, at approximately six o'clock in the evening, Plaintiff entered a parking lot near the intersection of Gray Place and Radford Street in the City of Yonkers, New York. At such time, Plaintiff was lawfully driving a 2003 gray Infinity and lawfully in the vicinity of Yonkers, New York.

23.    Plaintiff arrived at the parking lot with the sole intention of providing transportation for his friend, Jasmine Green, who had requested that Plaintiff drive Mr. Green from his girlfriend's apartment in Yonkers, New York to his grandmother's home in Peekskill, New York.

24.    Upon Plaintiff's arrival, Mr. Green approached Plaintiff's vehicle, opened the passenger door, and placed a book bag along with his other belongings in the back seat of Plaintiff's vehicle. The book bag and other belonging of Mr. Green's were later found to contain narcotics.

25.    As Mr. Green began to sit in the passenger seat of Plaintiff's vehicle, Defendants KOCH and MOLINA, in plain clothes, exiting an unmarked police vehicle and without identifying themselves as police officers, approached Plaintiff's vehicle and ordered both Mr. Green and Plaintiff not to move.

26.    Defendants KOCH and MOLINA ordered Plaintiff (who was inside of the vehicle) to turn off the engine of his vehicle and to place his hands on the steering wheel.  Defendants KOCH and MOLINA ordered Mr.

Green (who at this point was outside of the vehicle) to put his hands on the hood of Plaintiff's vehicle.

27.     Defendants KOCH and MOLINA also ordered Plaintiff to step out of his vehicle and to place his hands on the hood.  Plaintiff complied with the Defendants' command.

28.     Once Plaintiff was out of his vehicle, Defendant KOCH placed Plaintiff in handcuffs and kept him detained.

29.     While detaining Plaintiff without probable cause or reasonable suspicion to believe he was engaged in a crime, Defendants KOCH and MOLINA searched Plaintiff's person and vehicle.

30.     At no time during the unlawful search and seizure of Plaintiff's person and vehicle did the Defendants give Plaintiff a reason for this illegal seizure or search.

31.     Shortly thereafter, Defendants CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, and other members of the YPD arrived on the scene and assisted KOCH and MOLINA in the unlawful detention and search of Plaintiff's vehicle and person.

32.     Defendants KOCH, MOLINA, CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, and other members of the YPD, questioned Plaintiff and Mr. Green as to whether either owned the book bag placed by Mr. Green inside Plaintiff's vehicle.  Plaintiff denied ownership of the book bag. Mr. Green admitted to the Defendants that he was the sole owner of such book bag.

33.     Defendants KOCH, MOLINA, CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, and other members of the YPD, handcuffed, searched, and detained Mr. Green inside a police vehicle that was parked on the scene.

34.     Defendants KOCH, MOLINA, CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, and other members of the YPD, also handcuffed, searched, and detained another individual, Tyrone Hall, who had been standing in the vicinity of Plaintiff's vehicle. The Defendants conducted a search of both Mr. Hall's person and his vehicle--which was a purple Mercedes that was parked on the scene.

35.     Defendants KOCH, MOLINA, CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, and other members of the YPD, also conducted interviews of several individuals, including Shantel Crawford, who were present during and before Plaintiff's arrival in the parking lot.

36.     Defendants KOCH, MOLINA, CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, and other members of the YPD, ultimately released both Mr. Hall and Mr. Green without conducting any further investigation into the matter although: (1) Mr. Hall was being investigated at the time by the Defendants and other state and federal law enforcement agencies for narcotic trafficking; (2) Mr. Green had admitted to the Defendants that he was the sole owner of the book bag

that was found in Plaintiff's vehicle; and (3) Plaintiff had denied ownership of the book bag.

37.     Defendants KOCH, MOLINA, CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, and other members of the YPD, continued to detain Plaintiff without probable cause or legally obtained evidence demonstrating that he had committed a crime.

38.     To justify Plaintiff's detention, Defendants YPD, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, JOHN DOES, and JANE DOES falsely alleged that they had stopped Plaintiff's vehicle because they observed Plaintiff commit a traffic violation, and then falsely alleged that they had seen narcotics in plain view in Plaintiff's vehicle.

39.     Defendants KOCH and MOLINA falsely claimed that the search and seizure of Plaintiff's vehicle was legally justified by the plain view doctrine. In this regard, Defendants KOCH and MOLINA falsely claimed to have seen drugs in plain view on the passenger seat of Plaintiff's car. *See* Incident Report No. 11095201, dated September 16, 2011 and traffic infraction summons (hereinafter "Incident Report", Exhibit 1 hereto).     Defendant MOLINA falsely alleged in the Incident Report that, among other falsehoods: (1) Defendants KOCH and MOLINA were in the area of Radford St and Gray Place due to numerous complaints of narcotics activity; (2) the Defendants stopped Plaintiff's vehicle as a result of a traffic violation; (3) Defendants MUELLER and

STARKEY were present at the time that Plaintiff's vehicle was first approached and searched by Defendants KOCH and MOLINA; and (4) Defendant STARKEY also looked into Plaintiff's vehicle and observed cocaine in plain view. *Id. at* * 6.

40.    Defendant MOLINA omitted from the Incident Report all exculpatory and materially relevant information relating to Plaintiff's arrest, including, but not limited to: (1) Mr. Green's and Mr. Hall's presence at the time Plaintiff's vehicle was first stopped and searched by the Defendants; (2) Mr. Green's providing statements admitting ownership of the book bag found in Plaintiff's vehicle; (3) several eyewitnesses' providing statements to the Defendants regarding the events at issue; and (4) Mr. Green and Mr. Hall's being stopped, handcuffed, questioned, seized, and searched by the Defendants while on the scene.

41.    At all times, Plaintiff was cooperative with Defendants, and despite the fact that he neither committed nor admitted to any crime, he was seized, handcuffed, transported to police and court facilities, and held in jail as a result of the unlawful actions of members of the YPD including but not limited to: Defendants KOCH, MOLINA, CASSINO, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, and BRAIG..

42.    On or about April 4, 2012, the Defendants WCDAO, DIFIORE, CECCHINI, and other members of the WCDAO held grand jury

proceedings seeking an indictment against Plaintiff relating to the events of September 16, 2011 as described herein.

43.   Defendants WCDAO, DIFIORE, CECCHINI and others employed by the WCDAO knowingly presented materially false testimony of Defendants KOCH and MOLINA during grand jury proceedings which was used to criminally inculpate Plaintiff and obtain an indictment against him, despite Defendants' false testimony that Plaintiff was the sole owner/possessor of the book bag, that Plaintiff was stopped for a traffic infraction, that Plaintiff had narcotics in plain view in the vehicle, or that Plaintiff was the only suspect detained and searched.

44.   Defendants WCDAO, DIFIORE, CECCHINI and others employed by the WCDAO failed to present any evidence to the grand jury that exculpated Plaintiff, including the testimony they knew to be available of Jasmine Green, Tyrone Hall, and other eyewitnesses. *See, e.g.,* Letter of ADA Craig Cecchini to Jeff Chabrowe, Esq., dated February 1, 2012 (Exhibit 2 hereto)

45.   Defendants WCDAO, DIFIORE, CECCHINI and others employed by the WCDAO failed to present any evidence to the grand jury that would expose the falsity of Defendants KOCH and MOLINA testimony, including the readily available facts that: (1) Mr. Green was present at the time Plaintiff's vehicle was first stopped and searched by the Defendants; (2) Mr. Green provided statements admitting ownership of the book bag found in Plaintiff's vehicle; (3) the Defendants

interviewed several eyewitness during the stop, search, and seizure of Plaintiff's person, property, and effects; and (4) the Defendants stopped, handcuffed, questioned, seized, and searched both Mr. Green and Mr. Hall were both while on the scene.

46.   Defendants WCDAO, DIFIORE, CECCHINI and others employed by the WCDAO, with reckless and conscious disregard of their ethical and legal duties, knowingly presented materially false and misleading information to the grand jury in violation of state and federal law in order to obtain an indictment against Plaintiff.

47.   As a result of the Defendants WCDAO and YPD unlawful actions during these grand jury proceedings, Plaintiff was charged under indictment number 11-1534 with multiple felony counts including criminal possession of a controlled substance and other related charges. *See People v. Jamar Smythe,* Ind. No. 11-1534 (Exhibit 3 hereto).

48.   Thereafter, Defendants WCDAO, DIFIORE, HOCHHEISER, WOODLEY, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, presented false information provided by the Defendants MOLINA, KOCH, and other members of the YPD to rebut Plaintiff's pretrial motions seeking relief--including Plaintiff's claim that the Defendants search of his vehicle and seizure of evidence found therein was unconstitutional. *See* Affirmation of ADA Rashawn Woodley dated August 28, 2012 (Exhibit 4 hereto).

49.    On November 14, 2012, the trial court (Zambelli, J.) held a suppression hearing to address Plaintiff's contention that the Defendants' search of Plaintiff's vehicle and seizure him and of evidence found therein was unconstitutional.

50.    During the suppression hearing, Defendants WCDAO, DIFIORE, HOCHHEISER, WOODLEY, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, presented Defendant MOLINA's false account of the events of September 16, 2011 to rebut Plaintiff's claim that the Defendants search of his vehicle and seizure of evidence found therein was unconstitutional.

51.    Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, presented Defendant MOLINA's false testimony that, among other falsehoods: (1) he and his partner, Defendant KOCH, first spotted Plaintiff while conducting routine patrol of the area due to complaints of narcotics activity and gang activity; (2) their encounter with Plaintiff had been completely unexpected; and (3) Plaintiff was the only suspect detained, searched, and found to be in the vicinity of the drugs seized by the YPD on September 16 2011. *See* Testimony of YPD Dennis Molina at Suppression Hearing (Transcript was sealed upon dismissal of charges against Plaintiff, but

may be released upon Plaintiff's motion and order of Court) (Exhibit 5 hereto).

52.     Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, misled the Court to obtain a favorable ruling by using Defendant MOLINA's false, incomplete, and misleading testimony, which was designed to omit mention of material and exculpatory facts such as: (1) Mr. Green's presence at the time Plaintiff's vehicle was first stopped and searched by the Defendants; (2) Mr. Green's statements admitting ownership of the book bag found in Plaintiff's vehicle; and (3) Mr. Green and Mr. Hall being stopped, handcuffed, questioned, seized, and searched by the Defendants while on the scene.

53.     On November 14, 2012, the trial court, relying upon the false, incomplete, and misleading testimony of Defendant MOLINA as presented and adopted by Defendant WCDAO, denied Plaintiff's motion to suppress evidence seized by Defendants on September 16, 2011.

54.     The trial court ruled that, based on Defendant MOLINA's "credible testimony," the drugs had been in plain view after Defendants MOLINA and KOCH had lawfully stopped Plaintiff's vehicle for failing to signal when turning in violation of the Vehicle and Traffic Law section 1163(a). WCDAO now concedes such testimony was false. *See* Decision & Order dated November 14, 2012 (Exhibit 6 hereto).

55.   At Plaintiff's ensuing trial, Defendants WCDAO, DIFIORE, HOCHHEISER, and others members of the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, presented the same false, misleading, and incomplete testimony of Defendants MOLINA, KOCH, and other members of the YPD, that was presented to the grand jury and during the suppression hearing as described herein with the unlawful purpose of falsely inculpating Plaintiff for the purpose of obtaining his wrongful conviction.

56.   Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, also presented false, misleading, and incomplete documentary evidence designed to falsely inculpate Plaintiff for the purpose of obtaining his wrongful conviction.

57.   Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, disclosed to Plaintiff's defense and presented to the jury evidence designed to falsely inculpate Plaintiff for the purpose of obtaining his wrongful conviction that included, among other items: (1) an incomplete and altered radio transmission report; (2) a falsified traffic ticket; and (3) false information regarding a YPD video surveillance camera that was positioned in the vicinity of the parking lot where Plaintiff was arrested on September 16, 2011.

58.     Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, failed to present any evidence to the jury that would expose the false testimony of Defendants KOCH, MOLINA and others employed by the YPD, including readily available facts that: (1) Mr. Green was present at the time Plaintiff's vehicle was first stopped and searched by the Defendants; (2) Mr. Green provided statements admitting ownership of the book bag and other belongings found in Plaintiff's vehicle; (3) several eyewitness were interviewed by the Defendants during the stop, search, and seizure of Plaintiff's person, property, and effects; and (4) Mr. Green and Mr. Hall were both stopped, handcuffed, questioned, seized, and searched by the Defendants while on the scene.

59.     Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, knowingly and/or with conscious disregard of their duty to ascertain the truth and seek justice, also failed to present any evidence to the jury that exculpated Plaintiff, including the testimony of Jasmine Green they knew to be available.

60.     At the conclusion of the prosecution's case, Plaintiff called Mr. Green as a defense witness.   *See* Testimony of Jasmine Green (Transcript was sealed upon dismissal of charges against Plaintiff, but may be released upon Plaintiff's motion and order of Court) (Exhibit 7 hereto)**.**

61.   At Plaintiff's trial, Mr. Green testified that both the book bag and drugs found inside Plaintiff's vehicle were Mr. Green's belongings. Mr. Green testified that he had placed a knapsack, book bag, and a pair of jeans inside Plaintiff's vehicle.

62.   Mr. Green also testified that Plaintiff had no knowledge about the drugs or contraband Mr. Green had possessed on September 16, 2011 and that Plaintiff had not known that such items would be placed into Plaintiff's vehicle when Plaintiff drove Mr. Green to Mr. Green's grandmother's residence in Peekskill, NY.

63.   Despite the presentation of Mr. Green's testimony exculpating Plaintiff of any wrongdoing, Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, continued to prosecute Plaintiff seeking a guilty verdict on all counts, including cross-examination of Mr. Green and closing arguments vouching for the credibility of the officers and disputing the testimony of Mr. Green.

64.   Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO did not take any steps to verify Mr. Green's sworn trial testimony or conduct any investigation whatsoever to either (1) obtain evidence that supported Plaintiff's version of events and his innocence or (2) verify the YPD members' testimony, now known to be false, that was adopted and presented by the WCDAO as being true during Plaintiff's trial.

65.    Instead, Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO summarily dismissed Mr. Green's testimony and recklessly argued for Plaintiff's wrongful conviction-- consciously disregarding their duty to ascertain the truth, seek justice, and gather exculpatory evidence in Plaintiff's case.

66.    On or about November 27, 2012, Plaintiff was convicted of criminal possession of a controlled substance in the first degree in violation of New York State Penal Law 220.21(01); three counts of criminal possession of a controlled substance in the third degree in violation of New York State Penal Law 220.16(01), (02) and (12); unlawful possession of marijuana in violation of New York State Penal Law 221.05(00); and a traffic infraction in violation of Vehicle and Traffic Law § 1163(a).

67.    On April 2, 2013, Plaintiff was sentenced to serve a determinate term of fifteen years of imprisonment, followed by five years of post-release supervision. *See* Uniform Sentence & Commitment Report (Exhibit 8 hereto).

68.    On or about April 15, 2013, Plaintiff filed a timely notice of appeal. *See* Notice of Appeal  (Exhibit 9 hereto).

69.    While Plaintiff's appeal was pending, Plaintiff's counsel contacted Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, requesting any *Brady* evidence not previously disclosed by the WCDAO to Plaintiff's defense. The *Brady* request

included a specific request for any belongings or documentary evidence (specifically including a school calendar belonging to Mr. Green's daughter) inside Plaintiff's vehicle that may demonstrate Mr. Green's presence inside Plaintiff's vehicle on September 16, 2011.

70.   Defendants WCDAO, DIFIORE, HOCHHEISER, and others employed by the WCDAO, denied Plaintiff's request. Defendant HOCHHEISER falsely told Plaintiff's counsel that she had ordered the YPD to check the vehicle at the impound for the *Brady* evidence requested, but no such items were found inside the vehicle.

71.   Shortly thereafter, Plaintiff's counsel obtained permission from the impound to search Plaintiff's vehicle. Upon a search of the vehicle, Plaintiff's counsel found inside, among other material items, Mr. Green's belongings including a toothbrush, underwear, shirt, and school calendar belonging to his daughter--items the WCDAO and HOCHHEISER falsely denied to have existed.

72.   Post conviction, Plaintiff's counsel also discovered, through documents received pursuant to Freedom of Information requests, that Defendants YPD and WCDAO had withheld additional exculpatory evidence from Plaintiff's defense, including, but not limited to, evidence indicating that: (1) the radio transmission report provided to Plaintiff's defense had been altered and excised of material information relating to the events of September 16, 2011; (2) the traffic ticket presented at Plaintiff's trial had never actually been issued by the YPD and was a false

record; and (3) the YPD had destroyed footage of a video surveillance camera that had been positioned in the vicinity of the parking lot on September 16, 2011 where Plaintiff had been stopped and arrested by the YPD Defendants.

73.     On or about July 28, 2014, Plaintiff received notice of a letter from Defendant WARD, explaining that Defendant KOCH had submitted an affidavit in support of a search warrant for the seizure of controlled substances in an unrelated matter that was later found to contain material false statements.  *See* Letter of ADA Timothy Ward to Counsel, dated July 28, 2014 (Exhibit 10 hereto).

74.     While Plaintiff's appeal was pending, Plaintiff, through his wife, reported his wrongful conviction and the unlawful acts of the YPD and WCDAO to the United States Attorney's Office for the Southern District of New York (AUSA Tomoko Onozawa), which was conducting an investigation of Defendant YPD for various civil rights violations.   On October 27, 2014, Plaintiff received a letter from Defendant SAPAKOFF notifying Plaintiff that Defendant KOCH had been arraigned on charges of perjury in the second degree and official misconduct as a result of Defendant KOCH's conduct in preparing a search warrant in another unrelated matter that was executed on March 21, 2014 in the City of Yonkers, New York. *See* Letter of ADA Laurie Sapakoff to Anthony DiPietro Esq., dated October 27, 2014 (Exhibit 11 hereto)

75.   After receiving the above referenced letter, Plaintiff's attorney requested that the WCDAO review the record of Plaintiff's suppression hearing and trial at which Defendant KOCH testified to determine whether his testimony was also perjurious in Plaintiff's case.

76.   On April 3, 2015, Defendant BENDER informed Plaintiff's counsel that based on a post-conviction review and investigation in *People v. Koch*, the WCDAO learned that the YPD Defendants named herein did not unexpectedly encounter Plaintiff's vehicle on September 16, 2011 as they had claimed at Plaintiff's trial.  *See* Letter of ADA Steven A. Bender to Hon. Barbara G. Zambelli dated April 3, 2015 (Exhibit 12 hereto)

77.   Defendant WCDAO contended that Plaintiff's conviction should be vacated because aforementioned Defendant police officers and detectives had falsely alleged that the initial justification for Plaintiff's stop and seizure was that Defendants CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, JOHN DOES, and JANE DOES had been patrolling the area due to numerous complaints of narcotic activity and had seen Plaintiff make a right turn into a parking lot without signaling.

78.   Defendant WCDAO contended that during its post-conviction investigation, it discovered that the aforementioned Defendant police officers and detectives of the YPD had used a confidential informant ("CI"), who provided information that led Defendants MOLINA, KOCH,

23

and other members of the YPD, to be present in the vicinity before the police saw and stopped Plaintiff on September 16, 2011.

79.     Defendant WCDAO represented that the Defendant YPD had failed to disclose the existence of the CI to the WCDAO and, when asked by certain prosecutors, had affirmatively misrepresented that no CI had existed in Plaintiff's case.

80.     The new information disclosed by the WCDAO was wholly inconsistent with the initial incident and police report of the YPD, Defendant MOLINA's testimony at the suppression hearing, and the testimony of Defendants MOLINA, KOCH, and other members of the YPD at Plaintiff's trial.

81.     On April 10, 2015, Plaintiff, by and through his attorneys, moved the Court, pursuant to Sections 440.10(1)(h) and 440.10(1)(g) of the New York Criminal Procedure Law, for an order vacating Plaintiff's conviction. *See* Plaintiff's Motion to Vacate dated April 10, 2015 (Exhibit 13 hereto).

82.     On April 17, 2015, the District Attorney's Office joined Plaintiff's motion and requested that the court vacate Plaintiff's conviction. *See* People's Cross Motion to Vacate dated April 17, 2015 (Exhibit 14 hereto).

83.     On April 21, 2015, the court granted the motion to vacate Plaintiff's conviction, and ordered the release of Plaintiff from prison.

Plaintiff served approximately 1,314 days in prison for a crime he did not commit.

84.    Notwithstanding its post-conviction findings of the unlawful and outrageous acts committed by the YPD Defendants warranting the WCDAO to join in a motion to vacate Plaintiff's conviction, Defendants WCDAO, DIFIORE, WARD, and BENDER continued efforts to wrongfully prosecute Plaintiff and requested that the case--including all charges--be restored to pre-trial status.

85.    On April 30, 2015, Plaintiff's counsel made another request to Defendants WCDAO, DIFIORE, BENDER, and WARD for the disclosure of all *Brady* evidence relevant to Plaintiff's case--including all information that would allow the Court to determine whether dismissal of the indictment would warranted in the interest of justice. *See* Email of Anthony DiPietro, Esq., to ADA Steven Bender, dated April 30, 2015 (Exhibit 15 hereto).

86.    Defendants WCDAO, BENDER, and WARD did not substantively respond to Plaintiff's *Brady* request or disclose any of the specific information sought by Plaintiff's counsel.

87.    On May 7, 2015, the District Attorney's office moved to dismiss Plaintiff's indictment pursuant to CPLR 210.20 (l)(i) and 210.40. The People's motion to dismiss stated in relevant part:

> [P]ost-conviction review revealed the newly discovered evidence that led to the recent vacatur of defendant's conviction by this Court (Zambelli, J.): That Yonkers police

used a confidential informant (CI) in defendant's case, that the CI provided relevant information about this case to Molina before the police saw and stopped defendant on September 16, 2011, and that police not only failed to disclose the existence of the CI to this office, but police affirmatively misrepresented that no CI existed when asked by certain prosecutors in this Office. This new evidence was inconsistent with Molina's testimony at the suppression hearing in this case and Molina's and Koch's testimony at trial. That testimony created the inaccurate impression that the officers, when they first saw defendant's vehicle, did not have specific information that the defendant was transporting drugs. The newly discovered evidence demonstrated this Court had resolved defendant's suppression motion on less than the true facts, and created a reasonable possibility that, when viewed in the light most favorable to the defense, Koch's and Molina's testimony in some material aspects may have been false.

People's Motion to Dismiss, dated May 15, 2015 (Exhibit 16 hereto).

88.    On May 12, 2015, the trial court granted the People's motion to dismiss the indictment.

89.    Upon information and belief, during the time leading up to and subsequent to Plaintiff's arrest, the abovementioned Defendants conspired to and did fabricate a false account of the events underlying Plaintiff's arrest.

90.    As a result of this conspiracy to fabricate a false account, Plaintiff was maliciously prosecuted, wrongfully incarcerated for over three years, falsely charged with possession of narcotics, forced to defend himself in County Court, falsely convicted of these charges, suffered the other injuries and indignities herein alleged, and remained imprisoned until the charges were ultimately dismissed.

91.    Upon information and belief, the individual Defendants entered into the conspiracy described for the purposes of depriving Plaintiff of his civil and constitutional rights and to cover up their own unlawful and unconstitutional actions.

92.    Upon information and belief, the false testimony provided by Defendants KOCH and MOLINA, among other defendants of the YPD, elicited and adopted by the Defendant WCDAO at Plaintiff's trial was the result of, *inter alia*, negligent oversight, reckless disregard of its duty to ascertain the truth and seek justice, and a failure to supervise and investigate.

93.    The Defendants' careless, negligent, and reckless disregard of their duties resulted in the WCDAO's constructive knowledge and/or knowing use of perjured testimony in violation of Plaintiff's federal right to due process.

94.    As a result of the Defendants unlawful actions, Plaintiff was imprisoned for more than three years by Defendants NEW YORK STATE DEPARTMENT OF CORRECTION AND COMMUNITY SERVICES AND WESTCHESTER DEPARTMENT OF CORRECTIONS, consisting of more than twelve months from the date of the arrest until trial, and for over two years after the trial, throughout which period he was battered and continuously maliciously prosecuted until he was released from prison on April 21, 2015 and the dismissal of all charges on or about May 12, 2015.

95.    As a direct and proximate result of the aforesaid acts of the Defendants, Plaintiff has suffered and will continue to suffer injuries, including, but not limited to, loss of liberty, pecuniary injury, mental trauma, embarrassment, and mental suffering.

**FIRST CLAIM FOR RELIEF**

**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

96.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "95" with the same force and effect as if fully set forth herein.

97.    All of the aforementioned actions and omissions, engaged in under the color of state law and authority by the Defendants, their agents, servants and employees, deprived Plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to, his Fourth Amendment right to bodily integrity, and his right to be free from unlawful seizure of his person, unlawful search of his person, property and effects, and malicious prosecution.

98.    All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, and of the Constitution of the State of New York, in violation of 42 U.S.C. § 1983.

99.   The   acts   complained   of   were   carried   out   by   the aforementioned individual Assistant District Attorney Defendants in their capacities  as  Assistant  District  Attorneys,  with  all  the  actual  and/or apparent  authority  attendant  thereto,  pursuant  to  the  customs,  usages, practices, procedures and rules of the WCDAO.

100.   The   acts   complained   of   were   carried   out   by   the aforementioned individual YPD employee Defendants in their capacities as  police  officers  and/or  detectives  and/or  supervisors,  with  all  of  the actual  and/or  apparent  authority  attendant  thereto,  pursuant  to  the customs,  usages,  practices,  procedures,  and  the  rules  of  the  City  of Yonkers  and  the  YPD,  and  under  the  supervision  of  ranking  officers  of said department.

101.   Defendants, collectively and individually, while acting under color  of  state  law,  engaged  in  conduct  that  constituted  a  custom,  usage, practice,  procedure  or  rule  of  the  respective  municipality/authority, which  is  forbidden  by  the  Constitution  of  the  United  States  and  of  the Constitution of the State of New York.

## SECOND CLAIM FOR RELIEF

### FALSE ARREST and FALSE IMPRISONMENT

102.   Plaintiff  repeats,  reiterates  and  realleges  each  and  every allegation contained in paragraphs "1" through "101" with the same force and effect as if fully set forth herein.

103. On September 16, 2011, Plaintiff, while lawfully in the vicinity of Radford Street and Gray Place in Yonkers, New York, was without just cause, probable cause or provocation, maliciously, intentionally and falsely accused by Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, JANE DOES 1-10 AND JOHN DOES 1-10 of having committed a crime.

104. On September 16, 2011, upon arresting Plaintiff and depriving him of his liberty, Defendant police officers and/or detectives took Plaintiff to a police station in the City of Yonkers and arrested him.

105. On September 16, 2011 and at times thereafter, Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES, and JANE DOES further caused Plaintiff to have his fingerprints and photographs to be taken without his consent and in accordance with police procedures for the arrest of criminals and held him on various criminal charges at various police stations, correctional facilities and at the City of Yonkers Courthouse.

106. On or about September 16, 2011, Plaintiff was aware of his arrest and confinement, he did not consent to his arrest or confinement, and said confinement, seizure, arrest, and detention was without legal justification or privilege.

107. Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES, and JANE DOES, acting individually and in concert, with malice and knowledge that probable cause did not exist to arrest Plaintiff and prosecute him for possession of criminal substances, caused Plaintiff to be arrested, charged, and prosecuted for that crime, thereby violating Plaintiff's established rights under the Fourth and Fourteenth Amendments of the U.S. Constitution and Article I, §§ 6, 11 and 12 of the Constitution of the State of New York, to be free of unreasonable searches and seizures.

108.  As a result of the aforesaid conduct by Defendants, Plaintiff was deprived of liberty, subjected to illegal, improper and false arrest by the Defendants, taken into custody, falsely imprisoned, detained, and confined, without ay probable cause, privilege, or consent, and otherwise injured, all to his damage in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**

**MALICIOUS PROSECUTION**

109.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "108" with the same force and effect as if fully set forth herein.

110. On or about September 16, 2011 and at times thereafter, a criminal complaint and indictment was issued by CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES 1-10, JANE DOES 1-10, their agents, servants and/or employees, without probable cause, reasonable cause, or legal justification.

111. That on or about September 16, 2011 and at times thereafter, a criminal action against Plaintiff was commenced by said Defendants, their agents, servants and/or employees, without probable cause, reasonable cause, or legal justification.

112. Solely as a result of the aforesaid, Plaintiff's life, liberty, and wellbeing were interfered with and significantly disrupted.

113. The criminal action against Plaintiff was continued for an extended period of time by said Defendants with malice and bad faith.

114. Solely as a result of the false arrest, assault, battery, false imprisonment, and malicious prosecution of Plaintiff, he was deprived of his liberty for an extended period of time and was subjected to scorn, ridicule, embarrassment and was degraded in the esteem of the community both personally and professionally.

115. The criminal action against Plaintiff was terminated favorably by dismissal in the interest of justice.

116. Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES, and JANE DOES withheld exculpatory evidence, misrepresented and falsified evidence. Specifically, the aforesaid Defendants, acting individually and in concert, fabricated documentary evidence and used false testimony to obtain Plaintiff's arrest and wrongful conviction.

117. The Defendants performed the above-mentioned acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's constitutional rights. As of 2011 and throughout to 2015, no reasonable officer or prosecutor would have believed this conduct to be lawful.

118. The Defendants COUNTY OF WESTCHESTER and WCDAO failed to adequately investigate the criminal charges against Plaintiff and continuously maliciously prosecuted Plaintiff despite his denying guilt and being in possession of exculpatory evidence, including Mr. Green's testimony.

119. The Defendant WCDAO was actively involved in the investigation and prosecution of Plaintiff and failed to carry out its duties to adequately investigate the allegations supported solely on the account of the Defendant YPD--an entity know to the WCDAO to be plagued by corruption and engaged in civil rights violations. Specifically, among

other things, WCDAO adopted false statements and failed to properly interview police, to investigate discrepancies, and to provide Plaintiff with *Brady* evidence.

120. Based on the Defendants actions as set forth above, Plaintiff was falsely and maliciously prosecuted by the WCDAO, compelled to retain counsel to defend himself, and forced to endure a full criminal trial.

121. As a direct and proximate result of defendants' actions, Plaintiff was wrongfully convicted and imprisoned for three years and seven months, and was otherwise harmed, damaged, and injured, all to his damage in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### CONSPIRACY

122. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "121" with the same force and effect as if fully set forth herein.

123. By their actions described above, Defendants, jointly and severally, acting in their capacities and under color of state law, conspired together and maliciously and willfully entered into a scheme to deprive Plaintiff of his civil rights, liberty, and well-being, and conspired together to commit the above-alleged unlawful acts.

124.   In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts, including, but not limited to, the following:

> a.  Falsely arresting and imprisoning Plaintiff, knowing they lacked probable cause or reasonable suspicion that a crime was committed;
>
> b.  Submitting false police reports concerning the illegal search and seizure of Plaintiff's person, property, and effects;
>
> c.  Fabricating evidence, falsifying reports, and lying to the WCDAO in pretrial communications, omitting to reveal the existence of a CI and the fact that the Defendants' encounter with Plaintiff was not unplanned.
>
> d.  Committing perjury during pre-trial hearings and at trial;

125.   Defendants' acts were the direct and proximate cause of injury and damage to Plaintiff and violated his rights as guaranteed by the Constitution of the United States and of the Constitution of the State of New York in violation of 42 U.S.C. § 1983.

126.   As a direct and proximate result of Defendants' conspiracy and actions in furtherance of the conspiracy, Plaintiff was wrongfully convicted and imprisoned for three years, seven months, and five days, and was otherwise harmed, damaged, and injured, all to his damage in amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**

**DENIAL OF CONSTITUTIONAL RIGHT TO A FAIR TRIAL**

127.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "126" with the same force and effect as if fully set forth herein.

128.  Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES, and JANE DOES created and/or presented false evidence against Plaintiff.

129.  Defendants CITY OF YONKERS, YPD, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, JOHN DOES, and JANE DOES forwarded false evidence to prosecutors in WCDAO, which was blindly adopted and presented by the Defendant WCDAO at Plaintiff's trial.

130.  Defendant WCDAO, in the prosecution of Plaintiff, failed to adequately investigate the evidence from aforesaid Defendant police officers/detectives, continued to prosecute Plaintiff after receiving exculpatory evidence, and failed to provide exculpatory evidence to Plaintiff's defense.

131. Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY,

FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES, and JANE DOES, thereafter provided/and or presented false testimony throughout Plaintiff's criminal proceedings.

132. In creating false evidence against Plaintiff, in forwarding false evidence and information to prosecutors, and in providing and/or presenting false, incomplete, and misleading sworn statements and evidence, Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES, and JANE DOES violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

133. As a result of the foregoing, Plaintiff was wrongfully convicted and imprisoned for three years, seven months, and five days, and was otherwise harmed, damaged, and injured, all to his damage in amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

134. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "133" with the same force and effect as if fully set forth herein.

135.   The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

136.   The aforementioned conduct was committed by Defendants while acting within the scope of their employment by Defendant CITY OF YONKERS.

137.   The aforementioned conduct was committed by Defendants while acting in furtherance of their employment by Defendant CITY OF YONKERS.

138.   The aforementioned conduct was committed by Defendants while acting within the scope of their employment by Defendant WCDAO.

139.   The aforementioned conduct was committed by Defendants while acting in furtherance of their employment by Defendant WCDAO.

140.   The aforementioned conduct by Defendants was intentional and done for the sole purpose of causing severe emotional distress to Plaintiff.

141.   As a result of the aforementioned conduct, Plaintiff suffered severe emotional distress, mental injury, embarrassment, humiliation, shock, fright, and loss of freedom.

142. As a result of the foregoing, Plaintiff was wrongfully convicted and imprisoned for three years, seven months, and five days, and was otherwise harmed, damaged, and injured, all to his damage in amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

## RESPONDEAT SUPERIOR LIABILITY

143.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "142" with the same force and effect as if fully set forth herein.

144.  At all times relevant herein, the Defendants CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG JOHN DOES 1-10, and JANE DOES 1-10, were acting within the scope of their employment as officers and agents of the YPD.

145.  At all times relevant herein, the Defendants DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES 1-10, and JANE DOES 1-10, were acting within the scope of their employment as officers and agents of the WCDAO.

146.  The CITY OF YONKERS, COUNTY OF WESTCHESTER, YPD, and WCDAO is liable for compensatory and exemplary damages under the doctrine of Respondeat superior or are bound to indemnify the individual defendants pursuant to the provision of the General Municipal Law for the tortious and unlawful acts of above-mentioned Defendants committed within the scope of their employment.

147.  As a result of the foregoing, Plaintiff was wrongfully convicted and imprisoned for three years, seven months, and five days, and was otherwise harmed, damaged, and injured, all to his damage in amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

## NEGLIGENT HIRING, TRAINING & SUPERVISION

148.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "147" with the same force and effect as if fully set forth herein.

149.   The above-described injuries to Plaintiff are the proximate result of the negligence of the Defendants, in that the Defendant CITY OF YONKERS and YPD failed to exercise reasonable care in hiring, employment, supervision, and training of its employees.

150.   Defendants CITY OF YONKERS, YPD, their agents, servants and employees were negligent, careless and reckless in hiring, retaining, training, monitoring, retraining, supervising, and promoting its employees but not limited to KOCH and MOLINA, in that said detectives, as employees of the CITY OF YONKERS and YPD, were not qualified to be hired or retained or promoted as police officers and detectives, lacked the experience, skill, training and ability to be employed, retained and used in the manner that each was employed by CITY OF YONKERS and YPD.

151.   Defendants CITY OF YONKERS and YPD failed to exercise due care and caution in their hiring, retaining, and/or promoting practices in that CITY OF YONKERS and YPD failed to adequately test, analyze test

results, and/or investigate above mentioned police officers backgrounds and performances.

152.   Defendants CITY OF YONKERS and YPD failed to exercise due care and caution in its hiring, retaining, training and/or promoting practices in that CITY OF YONKERS and YPD failed to adequately screen said police officers and detectives, failed to adequately monitor said police officers and detectives, and failed to adequately discipline said police officers and detectives when they violate YPD rules and regulations.

153. Defendant   CITY   OF   YONKERS   systemically   failed   to adequately train its police officers, detectives, and investigators to conduct constitutionally adequate investigations; not to lie about their conduct; to refrain from unconstitutional searches and seizures; to obtain probable cause to ensure that suspects would not be falsely arrested and maliciously prosecuted; to disclose to prosecutors material information favorable to criminal defendants; and to refrain from perjury.

154.   Defendant CITY OF YONKERS failed to adequately supervise its   police   officers,   detectives   and   investigators   in   conducting constitutionally adequate investigations; obtaining probable cause to ensure that suspects would not be falsely arrested and maliciously prosecuted; disclosing to prosecutors material information favorable to criminal   defendants;   testifying   truthfully;   and   refraining   from

unconstitutional searches and seizures. Officers knew that in this climate of poor supervision, they were free to deviate from constitutional requirements in these areas.

155.   Defendants CITY OF YONKERS and YPD were also negligent in that prior to and at the time of the acts complained herein, due to the prior history of the police officer and detective defendants named herein, they knew or should have known of the bad disposition of said Defendants, or at the very least had knowledge of facts that would put a reasonably prudent employer on inquiry concerning their bad disposition and the fact that Defendant police officers and detectives were not suitable to be hired and employed by CITY OF YONKERS and YPD and that due to their lack of training, these officers and detectives should have had adequate supervision so that they would have engaged in the occurrences complained of herein.

156.   Such failures to train, supervise and discipline, and such unconstitutional municipal customs, practices and/or policies, amounted to deliberate indifference to the constitutional rights of Plaintiff, and were the moving force behind the unconstitutional search and seizure of Plaintiff's person, property and effects, causing his arrest, prosecution, and incarceration, as well as all the ongoing injuries and damages set forth above.

157.   At all relevant times, the actions of CITY, YPD and all Defendants herein as described above were carried out in a reckless, deliberate, willful, wanton, malicious and grossly negligent manner.

158.   As a result of the foregoing, Plaintiff was wrongfully convicted and imprisoned for three years, seven months, and five days, and was otherwise harmed, damaged, and injured, all to his damage in amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

## UNCONSTITUTIONAL CUSTOM OR POLICY

159.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "158" with the same force and effect as if fully set forth herein.

160.   Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, and WCDAO by and through their final policymakers, had in force and effect during Plaintiff's criminal case and for years beforehand, a policy, practice or custom of conducting constitutionally inadequate investigations; conducting unconstitutional searches and seizures; fabricating evidence; committing and/or presenting perjury; failing to obtain probable cause to ensure that suspects would not be falsely arrested and maliciously prosecuted; suppressing information favorable to criminal defendants; and failing to follow the duties imposed by *Brady v. Maryland* and its progeny.

161. Defendant CITY OF YONKERS systemically failed to adequately train its police officers, detectives, and investigators to conduct constitutionally adequate investigations; not to lie about their conduct; to refrain from unconstitutional searches and seizures; to obtain probable cause to ensure that suspects would not be falsely arrested and maliciously prosecuted; to disclose to prosecutors material information favorable to criminal defendants; and to refrain from perjury.

162. Defendant CITY OF YONKERS failed to adequately supervise its police officers, detectives and investigators in conducting constitutionally adequate investigations; obtaining probable cause to ensure that suspects would not be falsely arrested and maliciously prosecuted; disclosing to prosecutors material information favorable to criminal defendants; testifying truthfully; and refraining from unconstitutional searches and seizures. Officers knew that in this climate of lax supervision, they were free to deviate from constitutional requirements in these areas.

163. Defendants COUNTY OF WESTCHESTE, failed to adequately train its prosecutors and to conduct constitutionally adequate investigations into the veracity of its cases; not to blindly rely upon the account of investigating officers that are previously known to the WCDAO to lack credibility; to refrain from relying upon and using evidence seized during unconstitutional searches and seizures conducted

by local law enforcement agencies known by the WCDAO to have a history of committing such unlawful acts; to obtain sufficient and credible proof in support of criminal charges to ensure that suspects would not be falsely arrested and maliciously prosecuted; to disclose favorable information to criminal defendants preparing for trial; and to refrain from presenting perjurious and misleading testimony  during court proceedings.

164.  Defendants COUNTY OF WESTCHESTER failed to adequately supervise its prosecutors and to conduct constitutionally adequate investigations into the veracity of its case; not to blindly rely upon the account of investigating officers that are previously known to the WCDAO to lack credibility; to refrain from relying upon and using evidence seized during unconstitutional searches and seizures conducted by local law enforcement agencies known by the WCDAO to have a history of committing such unlawful acts; to obtain sufficient and credible proof in support of criminal charges to ensure that suspects would not be falsely arrested and maliciously prosecuted; to disclose favorable information to criminal defendants preparing for trial; and to refrain from presenting perjured and misleading testimony  during court proceedings.

165.  Upon information and belief, the CITY OF YONKERS has paid nearly $3 million in the form of settlements and judgments in police misconduct cases from 2000 to 2009.

166.  The Defendants named herein have been accused in federal courts of customs and practices resulting in prior instances of illegal searches and seizures, filing of false charges, and malicious prosecution. Those accusations include but are not limited to:

    a.  Reyes, Jr. et al. v. Koch, individually and as Detective of the City of Yonkers Police Department et al., 7:2-15-cv-08560;

    b.  Tolentino et al. v. City of Yonkers, et al., 7:2015-cv-05894;

    c.  Evans v. City of Yonkers, et al., 1:2015-cv-00479;

    d.  Florim v. Traynor et al., 7:2008-cv-06920;

    e.  Pettiford v. City of Yonkers, et al., 7:2014-cv-06271;

    f.  Alexis v. City of Yonkers, et al., 7:2007-cv-05973;

    g.  Driver v. City of Yonkers, et al., 7:12-cv-03205.

167.  As is evidenced herein, Plaintiff's injuries, including the violation of his constitutional rights, the deprivation of his freedom, being prosecuted falsely and maliciously, suffering physical and emotional injuries, are all the direct and proximate result of the CITY OF YONKERS, COUNTY OF WESTCHESTER, WCDAO, and YPD policies and/or deliberate indifference to practices which involve false arrest, police cover-ups, malicious prosecution, illegal stops and searches, Fourth Amendment violations, and deliberate indifference to the need to train, supervise, monitor, investigate and discipline, including suspension, dismissal and/or reassignment offending police officers and prosecutors.

168.   Defendants CITY OF YONKERS, COUNTY OF WESTCHESTER, WCDAO, and YPD knew or should have known of the propensity of said Defendants to engage in the illegal and wrongful acts detailed above and/or as a matter of policy and practice, have with deliberate indifference, failed to take steps to uncover and/or correct such conduct.

169.   Upon information and belief, Defendants CITY OF YONKERS, COUNTY OF WESTCHESTER, WCDAO, and YPD had prior notice of the abusive propensities of the above-mentioned defendants, but took no adequate steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

170.   As a result of the foregoing conscious policies, practices, customs and/or usages, Defendants CITY OF YONKERS, COUNTY OF WESTCHESTER, WCDAO and YPD have permitted and allowed the employment and retention of individuals as police officers and prosecutors whose individual circumstances place the public or segments thereof at substantial risk of being victims of unlawful searches and seizures and malicious prosecution.   Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to Plaintiff.

171.   The acts of employees of the CITY OF YONKERS and YPD who violate the civil and constitutional rights of the citizens of the CITY OF YONKERS routinely go unreported and undisciplined by the WCDAO

or YPD, and their acts are condoned by other officers, including certain supervisors and prosecuting attorneys.

172.  This patter of actions violates the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, violated Plaintiff's right to be secure in his person, and denied Plaintiff due process of the law.

173.  As a result of the foregoing, Plaintiff was wrongfully convicted and imprisoned for three years, seven months, and five days, and was otherwise harmed, damaged, and injured, all to his damage in amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

## ASSAULT AND BATTERY

174.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "173" with the same force and effect as if fully set forth herein.

175.  While in the custody of the Defendants in the County of Westchester and City of Yonkers, Plaintiff was intentionally touched, pushed, assaulted, battered, violated, strip searched, humiliated, photographed, and handcuffed by the Defendants WESTCHESTER COUNTY OF CORRECTIONS, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SERVICES, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG JOHN

DOES 1-10, and JANE DOES 1-10, who were acting within the scope of their employment and authority in such a manner as to knowingly cause injury to Plaintiff.

176.   On September 16, 2011 and at times thereafter, Defendants NEW YORK STATE DEPARTMENT OF CORRECTION AND COMMUNITY SERVICES, WESTCHESTER DEPARTMENT OF CORRECTIONS, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG JOHN DOES 1-10, and JANE DOES 1-10, their agents, servants and employees, acting as agents and on behalf of the City of Yonkers, County of Westchester, and State of New York, within the scope of their employment, did intentionally, willfully, and maliciously assault and batter Plaintiff, in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally commit a violent and/or menacing act which threatened such contact Plaintiff, and their act caused apprehension of such contact in Plaintiff, and in a hostile and/or offensive manner touched Plaintiff and/or offensive bodily contact to Plaintiff and caused such battery in an about his body.

177. At   all   times   mentioned   the   actions   of   Defendants WESTCHESTER   COUNTY   OF   CORRECTIONS,   NEW   YORK   STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SERVICES, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG JOHN DOES 1-10, and JANE DOES 1-10, as described above were

carried out in a reckless, deliberate, willful, wanton, malicious and grossly negligent manner.

178. By reason of the aforesaid intentional assault and battery which was committed without legal justification or privilege by the defendants, their agents, servants and employees, who were acting within the scope of their employment and authority and without any probable or reasonable cause, Plaintiff was deprived of liberty, subjected to illegal, improper and false arrest by the Defendants, taken into custody, falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent, and otherwise injured, all to his damage in an amount to be determined at trial.

**ELEVENTH CLAIM FOR RELIEF**

**ABUSE OF PROCESS & FAILURE TO INTERVENE**

179. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "178" with the same force and effect as if fully set forth herein.

180. In arresting and prosecuting Plaintiff, Defendants CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, and JANE/JOHN DOES 1-10, acting in their capacity as agents, servants and employees of CITY OF YONKERS, YPD, COUNTY OF

WESTCHESTER, and/or WCDAO, were motivated by an ulterior purpose to do harm, without justification or economic or social excuse.

181.   In arresting and prosecuting Plaintiff, above said Defendants, acting in their capacity as agents, servants and employees of CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, and/or WCDAO, sought either to cause a detriment to Plaintiff's liberty or to gain a collateral advantage to the CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, and/or WCDAO, outside the legitimate ends of effectuating an arrest and/or conducting a criminal prosecution.

182.   As a result of the abuse of process by Defendants, Plaintiff sustained multiple injuries, including but not limited to loss of liberty, emotional distress, humiliation, loss of enjoyment of life, and fear and intimidation for his safety.

183.   At all times hereinafter mentioned the actions of Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, and all defendants as described above were carried out in a reckless, deliberate, malicious, and grossly negligent manner.

184.   As a result of the aforesaid conduct by Defendants, Plaintiff was deprived of liberty, subjected to illegal, improper and false arrest by the Defendants, taken into custody, falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent, and otherwise injured, all to his damage in an amount to be determined at trial.

185.  By their conduct and under color of state law, Defendants CITY OF YONKERS, YPD, COUNTY OF WESTCHESTER, WCDAO, CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JANE DOES 1-10, and JOHN DOES 1-10 had opportunities to intervene on behalf of Plaintiff to prevent his false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

186.  The Defendants' failures to intercede violated Plaintiff's clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the protections of state and federal law and the amendments enumerated in both the New York Constitution and the United States Constitution. No reasonable police officer or prosecutor in 2011 throughout to 2015 would have believed that it was lawful to fail to intercede to prevent the Defendants from fabricating evidence, committing perjury at the grand jury, pre-trial hearings, and trial, withhold and/or destroy exculpatory evidence, deliberately fail to conduct a constitutionally adequate investigation, and cause Plaintiff to be arrested and prosecuted without probable cause.

187.  As a direct and proximate result of Defendants' failures to intercede, Plaintiff was wrongly convicted and imprisoned for over three

years, and suffered the other grievous and continuing injuries and damages as set forth herein.

## TWELFTH CLAIM FOR RELIEF

### PUNITIVE DAMAGES

188. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "187" with the same force and effect as if fully set forth herein.

189. As a result of the extreme, wanton, and outrageous nature of the conduct of the Defendants CASSINO, KOCH, MOLINA, MUELLER, STARKEY, FOGARTY, CLEARY, BOCK, MULLIN, BRAIG, DIFIORE, HOCHHEISER, CECCHINI, WARD, WOODLEY, SAPAKOFF, BENDER, JOHN DOES, and JANE DOES, among other things, arresting and prosecuting the defendant without cause or reasons, and conspiring to deprive plaintiff of his civil rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

**WHEREFORE, Plaintiff prays as follows:**

A. That the Court award compensatory damages to Plaintiff and against Defendants, jointly and severally, in an amount to be determined at trial.

B. That the Court award punitive damages to Plaintiff, and against all individual defendants, in an amount to be determined at trial,

that will deter such conduct by defendants in the future;

      C.     For a trial by jury;

      D.     For pre-judgment and post-judgment interest and recovery of Plaintiff's costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

      E.     For such other and further relief as this Court may deem appropriate.

Respectfully submitted,

*Attorneys for Plaintiff*

_____-*S*-_____
FASULO BRAVERMAN & DI MAGGIO, LLP
225 Broadway, Suite 715
New York, NY 10007
(212) 566-6213

_____-*S*-_____
Anthony DiPietro, Esq.
LAW OFFICE OF ANTHONY DIPIETRO
15 Chester Avenue
White Plains, New York 10601